UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN RAUL, Derivatively on Behalf of Nominal Defendant GLOBAL BROKERAGE, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID SAKHAI, JAMES G. BROWN, ROBIN DAVIS, KENNETH GROSSMAN, ARTHUR GRUEN, ERIC LEGOFF, BRYAN I. REYHANI, RYAN SILVERMAN, EDUARD YUSUPOV, WILLIAM AHDOUT, DROR NIV and ROBERT LANDE, <br><br> Defendants, <br><br> and <br><br> GLOBAL BROKERAGE, INC., <br><br> Nominal Defendant. | Case No. 1:17-cv-02035 <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **DEMAND FOR TRIAL BY JURY** |

Plaintiff Jonathan Raul ("Plaintiff"), by and through his undersigned attorneys, brings this shareholder derivative action for the benefit of Nominal Defendant, Global Brokerage, Inc. ("Global Brokerage" or the "Company"), against certain current and former officers and members of the Company's board of directors (the "Board") seeking to remedy defendants' violations of §14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes without limitation: (a) review and analysis of public filings made by Global Brokerage and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the defendants (as defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Global Brokerage's website concerning the Company's public statements; (d) review of the pleadings and other documents in the securities class action lawsuits pending in the U.S. District Court for the Southern District of New York captioned *Khoury v. FXCM Inc.*, 1:17-cv-916-RA, *Zhao v. FXCM Inc., et al.*, 1:17-cv-955-UA and *Blinn v. FXCM Inc., et al.*, 1:17-cv-1028-RA; and (e) review of other publicly available information concerning Global Brokerage and the defendants.

**NATURE OF THE ACTION**

1. This is a shareholder derivative action on behalf of Nominal Defendant Global Brokerage seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under § 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder as a result of defendants causing the Company to issue materially misleading statements and/or omitting material information in Global Brokerage's public filings and financial statements

from approximately March 15, 2012 until the present (the "Relevant Period").[1]

2. The Company was formerly known as FXCM Inc. ("FXCM"), and changed its name to Global Brokerage on February 21, 2017, with the name change becoming effective on February 27, 2017.[2] Global Brokerage, under its former name FXCM, is a holding company with its sole asset being a 50.1% controlling equity interest in FXCM Holdings, LLC ("FXCM Holdings"), in which Global Brokerage is the sole managing member.

3. Global Brokerage operates through FXCM Holdings, which is an online provider of foreign exchange ("forex" or "FX") trading and related services to approximately 175,000 active retail accounts globally. The Company offers customers access to over-the-counter ("OTC") forex markets through its website – also known as its trading platform – that allows customers to trade forex. In a forex trade, a participant buys one currency and simultaneously sells another, a combination known as a "currency pair." Global Brokerage's website presents forex customers with price quotations on approximately 39 currency pairs from up to 31 global banks, financial institutions and market makers.

4. In or around 2007, the Company purportedly transitioned from utilizing a "dealing desk" model to transact with customers to using what the Company and forex traders call an "agency" model (or "no dealing desk" model).

5. In an agency model, or no dealing desk model, a customer visits the Company's online trading platform (the website), and logs into the customer's FX trading account. The

---

[1] The false and misleading statements were issued in the Company's public filings from approximately March 15, 2012 to February 6, 2017; however, the wrongs complained of herein continue through to the present as Global Brokerage's internal controls remain deficient.

[2] The Company continues to trade on the Nasdaq Global Market ("NASDAQ") under its new ticker symbol "GLBR." The Company formerly traded on NASDAQ under the ticker symbol "FXCM."

customer then submits a request for an FX quote, which is the buy and sell price for a currency pair, to the Company through its online trading platform. Once the Company receives the customer's request for an FX quote, the Company asks for FX quotes (for the requested currency pair) from all the liquidity providers the Company utilizes.[3] Once the liquidity providers receive the Company's requests, each independently submits an FX quote to the Company. Not all liquidity providers may submit quotes and at times, the Company does not receive a quote from all liquidity providers. Once the Company receives FX quotes, the Company provides the best FX quote to the customer. After the customer receives the best FX quote from the Company, the customer decides whether to place a trade or not. If the customer decides to proceed with a trade, the customer submits a buy or sell order for a specific currency pair to the Company. Once the Company receives the customer's order, the Company forwards the customer's order to the appropriate liquidity provider. After the liquidity provider receives the customer's order, it executes the trade and delivers the customer's position to the Company.[4] Once the Company receives the customer's position from the liquidity provider, the Company delivers the position to the customer. Throughout this process during the Relevant Period, the Company, as stated in its public filings described below, purportedly acted as a broker-intermediary, rather than actually providing liquidity to its customers.[5]

---

[3] "Liquidity providers" are the financial institutions that compete for the retail customers' orders, *i.e.*, banks.

[4] At this point, however, the liquidity provider decides when to execute the trade and may decide not to execute the trade. In that case, the process starts over where the Company asks for FX quotes from its liquidity providers.

[5] *See U.S. Commodity Futures Trading Commission v. Forex Capital Markets, LLC*, 1:16-cv-6551 (KBF) (S.D.N.Y. Jan. 30, 2017) (Memorandum in Opposition to Defendant's Partial Motion to Dismiss First Amended Complaint, Ex. 2) (ECF No. 59).

6. However, throughout the Relevant Period, the Company had an undisclosed interest in the market maker that consistently "won" the largest share of Global Brokerage's trading volume, and thus was taking positions adverse to Global Brokerage's retail customers. That market maker was a startup firm backed by Global Brokerage and founded by a former executive employee of Global Brokerage while he was working at the Company, that operated for the first year of its existence out of the Company's offices, and that shared most of its trading profits with the Company. The market maker was Effex Capital, run by former Global Brokerage employee John Dittami ("Dittami"), who had been working at FXCM/Global Brokerage since 2009.[6]

7. Throughout the Relevant Period, defendants caused Global Brokerage to issue false and misleading statements and/or omit material information concerning the Company's business, operational and compliance policies. In particular, the Company issued false and misleading statements and/or failed to disclose that between September 4, 2009 through at least 2014, Forex Capital Markets LLC ("FXCM LLC"), Global Brokerage's wholly owned U.S. subsidiary, engaged in false and misleading solicitations of Global Brokerage's retail foreign exchange customers by concealing its relationship with Effex Capital, the Company's most important market maker and by misrepresenting that the Company's "no dealing desk" platform had no conflicts of interest with its customers. Defendants also failed to disclose that FXCM LLC made false statements to the National Futures Association ("NFA") about its relationship with Effex Capital. Accordingly, Global Brokerage misled investors regarding its adverse position to its retail customers and, as a result of the foregoing, Global Brokerage's statements were materially false and/or misleading at all relevant times.

---

[6] Victor Golovtchenko, *Exclusive: NFA Charged FXCM for Using Own LP for No Dealing Desk Execution*, Finance Magnates (Feb. 7, 2017), *available at* http://www.financemagnates.com/forex/brokers/exclusive-nfa-charged-fxcm-using-lp-no-dealing-desk-execution/.

8.      The truth began to emerge on February 6, 2017, when the U.S. Commodity Futures Trading Company ("CFTC") issued an order finding that FXCM LLC engaged in false and misleading solicitations of FXCM LLC's retail foreign exchange customers (the "CFTC Order"). The CTFC Order stated, in pertinent part:

> **Washington, DC** – The U.S. Commodity Futures Trading Commission (CFTC) today issued an Order filing and settling charges against **Forex Capital Markets, LLC** (FXCM), its parent company, **FXCM Holdings, LLC** (FXCM Holdings), and two founding partners, **Dror ("Drew") Niv**, and **William Ahdout**, who were, respectively, Chief Executive Officer of FXCM and Managing Director of FXCM, (collectively, Respondents). FXCM's principal place of business is New York, New York; Niv resides in Connecticut; and Ahdout resides in New York.
>
> The CFTC Order finds that, between September 4, 2009 though at least 2014 (the Relevant Period), FXCM engaged in false and misleading solicitations of FXCM's retail foreign exchange (forex) customers by concealing its relationship with its most important market maker and by misrepresenting that its "No Dealing Desk" platform had no conflicts of interest with its customers. The Order finds FXCM, FXCM Holdings, and Niv responsible for FXCM making false statements to the National Futures Association (NFA) about its relationship with the market maker.
>
> The Order requires Respondents jointly and severally to pay a $7 million civil monetary penalty and to cease and desist from further violations of the Commodity Exchange Act and CFTC Regulations, as charged. FXCM, Niv, and Ahdout agree to withdraw from CFTC registration; never to seek to register with the CFTC; and never to act in any capacity requiring registration or exemption from registration, or act as a principal, agent, officer, or employee of any person that is registered, required to be registered, or exempted from registration with the CFTC.
>
> **"The CFTC Is Committed to Protecting Customers from Harm in the Markets It Regulates"**
>
> "Full and truthful disclosure to customers and honest discourse with self-regulatory organizations such as NFA are vital to the integrity and oversight of our markets," said Gretchen L. Lowe, Principal Deputy Director and Chief Counsel of the CFTC's Division of Enforcement. "Today's actions demonstrates that the CFTC is committed to protecting customers from harm in the markets it regulates."
>
> FXCM is registered with the CFTC as a Futures Commission Merchant and Retail Foreign Exchange Dealer. FXCM has been providing retail customers with access to over-the-counter forex markets through a proprietary technology platform and has acted as counterparty in transactions with its retail customers in which