Defendant Yusupov received $2,089,430, $808,781, and $1,469,044 in total compensation, respectively. The Company does not claim that Defendant Yusupov is an independent director and because Defendant Yusupov's primary source of income and primary employment is, his employment as Global Head of Dealing of Global Brokerage and his professional reputation is inextricably bound to his role at Global Brokerage, Defendant Yusupov is incapable of acting independently and demand is futile upon him.

### Demand is Futile as to Defendant Grossman Because of His Role as Managing Director of the Company and the Company Admits He is Not an Independent Director

110. Demand is futile as to defendant Grossman since the Company admits he is not an independent director. Further, defendant Grossman is one of the original founders of the Company and a Managing Director. Upon information and belief, defendant Grossman's principal employment is as one of the Company's Managing Directors. As such, because his primary source of income and primary employment is his employment as Managing Director and his professional reputation is inextricably bound to his role at Global Brokerage, defendant Grossman is incapable of acting independently and demand is futile upon him.

### Demand is Futile as to the Members of the Audit Committee

111. Pursuant to the Company's Audit Committee Charter[17], defendants Gruen (Chair), Brown and Davis, as members of the Company's Audit Committee for the fiscal years 2012-2016 (the "Audit Committee Defendants"), were responsible for the oversight of the accounting, financial reporting processes, and financial statements of Company. Moreover, it was the policy and practice of Global Brokerage's Audit Committee to review SEC filings and press releases

---

[17] Audit Committee Charter of the Board of Directors, *available at* http://files.shareholder.com/downloads/AMDA-13JM9E/3979174781x0x611176/FE14D990-6CF5-4DA3-A80A-6084644EB741/AuditCommitteeCharter_final_11_11_10.pdf.

before their issuance. As a result, the Audit Committee Defendants knew that in the 2012-2016 Proxy Statements, the Company failed to disclose the material information described above. Either the Audit Committee Defendants knew the 2012-2016 Proxy Statements omitted the following material information, or should have known, that: (i) despite representing that the Company was operating under a "no dealing desk" platform, the Company was taking positions adverse to those of its customers; (ii) that the Company had a relationship with its most important market maker, Effex Capital, that "won" the majority of customers' orders; (iii) customers' profits or losses were tied to the Company's bottom line because the Company was acting not acting only as a credit intermediary, as it represented, but instead was a market maker; and (iv) Global Brokerage's relationship with Effex Capital was concealed. However, the Audit Committee Defendants violated federal securities law by allowing the misleading disclosures described herein. As a result, demand is excused as to defendants Gruen, Brown and Davis.

112.   Pursuant to the Charter of the Audit Committee of the Board of Directors[18] (the "Audit Committee Charter"), the purpose of the Audit Committee is to "provide assistance to the Company's Board of Directors with respect to its oversight of: (i) [t]he quality and integrity of the Company's financial statements and accounting and financial reporting processes; (ii) [t]he Company's compliance with legal and regulatory requirements...."

113.   The members of the Audit Committee, in the performance of their duties, either knew or should have known that the Company received approximately $77 million from Effex Capital from 2010 through 2014, along with the knowledge that such payments were contrary to the Company's consistent representations that it operated pursuant to an agency model,

---

[18] *See* Charter of the Audit Committee of the Board of Directors, *available at* http://files.shareholder.com/downloads/AMDA-13JM9E/3979174781x0x611176/FE14D990-6CF5-4DA3-A80A-6084644EB741/AuditCommitteeCharter_final_11_11_10.pdf.

purportedly not taking positions adverse to its retail customers. As such, the Audit Committee Defendants knew of the false and misleading statements described above and have chosen not to act in connection with the wrongdoing described herein. As a result, demand upon defendants Gruen, Brown and Davis, as members of the Audit Committee, is futile and therefore excused.

### Demand is Futile as to all the Director Defendants

114. All the Director Defendants failed to take legal action against those who were responsible for permitting Global Brokerage to function without effective internal controls during the period when the Company filed false and misleading statements with the SEC. While the Director Defendants permitted defendants Niv and Ahdout to leave the Company without full and truthful disclosure of their wrongdoing at Global Brokerage, they failed to clawback previously paid bonus compensation and/or salary from those defendants. Thus, demand on the Board is futile and therefore excused.

### Demand is Futile as to the Members of the Compensation Committee

115. For the years 2012, 2013, 2014 and 2015, Global Brokerage's Compensation Committee was comprised of defendants Brown and Gruen (the "2012-2015 Compensation Committee Defendants"). For the year 2016, the Company's Compensation Committee was comprised of defendants Brown, Gruen and Silverman (the "2016 Compensation Committee Defendants," together with the 2012-2015 Compensation Committee Defendants, the "Compensation Committee Defendants"). Pursuant to Global Brokerage's Compensation Committee Charter[19], the Compensation Committee's responsibilities and duties including, among other things:

- Review and approve corporate goals and objectives relevant to CEO and other

---

[19] Available at http://files.shareholder.com/downloads/AMDA-13JM9E/397917478_1x0x61117 5/936F76BA-CA7F-424F-A858-A7EB0770D68E/CompCommitteeCharter_final_11_11_10.pdf.

39

executive officers' compensation, including annual performance objectives, if any.

- Evaluate the performance of the CEO in light of such goals and objectives and, either as a committee or together with other independent directors…determine and approve the annual salary, bonus, equity-based incentives and other benefits, direct and indirect, of the CEO based on such evaluation.

- Review and approve or, as directed by the Board of Directors, recommend to the Board of Directors for approval, the annual salary, bonus, equity and equity-based incentives and other benefits, direct and indirect, of the other executive officers, taking into consideration input from the CEO, as appropriate.

- In connection with executive compensation programs: (i) review and recommend to the full Board of Directors, or approve, new or modified executive compensation programs; (ii) review on a periodic basis the operations of the Company's executive compensation programs to determine whether they are effective in achieving their intended purpose(s); (iii) establish and periodically review policies for the administration of executive compensation programs; and (iv) take steps to modify any executive compensation program that yields payments and benefits that are not reasonably related to executive and corporate performance.

- Prepare the compensation committee report on executive officer compensation as required by the SEC to be included in the Company's annual proxy statement or annual report on Form 10-K filed with the SEC.

- Maintain minutes or other records of meetings and activities of the Committee.

116. The Compensation Committee Defendants presided over an utter failure of corporate governance by permitting the Company to suffer from a widespread and pervasive deficiency of internal controls for years, and approving executive officers' and directors' continued and excessive compensation. In so doing, any demand upon the Compensation Committee Defendants is futile, and therefore excused.

### Additional Reason for Demand Futility

117. Upon information and belief, Global Brokerage's officers and directors are protected against personal liability for their acts of mismanagement and violations of federal securities law alleged in herein by directors' and officers' liability insurance which they caused

the Company to purchase for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Global Brokerage. Upon information and belief, however, there have been certain changes in the language of directors' and officers' liability insurance policies in the past few years and the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Global Brokerage against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Global Brokerage, there would be no directors' and officers' insurance protection and thus, they will not bring such a suit. On the other hand, such insurance coverage exists for this action, which is brought derivatively, and will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile, and therefore, excused.

## COUNT I

### Against all Defendants for Violations of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 Promulgated Thereunder

118.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

119.   Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange of 1934, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's 2012-2016 Proxy Statements filed violated §14(a) and Rule 14a-9 because they omitted material information regarding the wrongdoing of defendants, and included by reference materially false and misleading financial statements.

120.    In the exercise of reasonable care, defendants should have known that the 2012-2016 Proxy Statements contained misleading information and/or omitted material information.

121.    The misrepresentations and omissions in the 2012-2016 Proxy Statements were material to Company shareholders in voting on the 2012-2016 Proxy Statements.

122.    The Company was damaged as a result of the defendants' material misrepresentations and omissions in the 2012-2016 Proxy Statements.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment in the Company's favor against all defendants as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Global Brokerage and that Plaintiff is an adequate representative of the Company;

B.    Determining and awarding to Global Brokerage the damages sustained by it as a result of the violations set forth above from each of the defendants, jointly and severally, together with interest thereon;

C.    Directing Global Brokerage and the Director Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Global Brokerage and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's By-Laws or Articles of Incorporation; and the following actions as may be necessary to ensure proper Corporate Governance Policies:

> (1) a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;